| 107    521
| f 33 SC ²264

## Pittsburgh Insurance Company *versus* Frazee.

1. In an action upon a policy of fire insurance on personal property, containing the usual stipulation that the policy should be void unless the insured was the sole owner of the property insured, the question of such ownership by the insured is for the jury.

2. Where, in such case, there is testimony which, if believed by the jury, would warrant them in finding that the insured was the sole owner, the question should be submitted to the jury, notwithstanding contradictory evidence on that subject.

3. A policy of fire insurance on a stock of goods contained a provision that the policy should be void " unless the assured be and shall remain the sole, undisputed and exclusive owner of the legal title to the subject of insurance mentioned in this policy." In a suit by the insured to recover for a loss, the plaintiff testified that he bought and paid for the goods and replenished the stock from his individual funds ; that his brother was employed to conduct the business, and to receive for his services one half the net profits and be responsible for one half the losses from bad debts. Plaintiff was corroborated in this by his brother, who disclaimed any title to the goods. The evidence showed, however, that the business had been conducted on the books in the firm name of plaintiff " & Bro.," the sign was in the firm name, and, moreover, in the proofs of loss submitted by the plaintiff after the fire, sworn to by plaintiff and his brother, it was stated " the property insured belonged to Jonas F. and Jasper F., doing business as F. & Bro., each owning one half interest in the property " :

   *Held*, that the court properly submitted to the jury the question of plaintiff's sole ownership, under instructions that if they believed the facts as testified to by the plaintiff, then plaintiff was the sole owner of the goods.

4. Where a policy of fire insurance is issued upon a " stock of dry goods, groceries and merchandise usually kept in a country store," the company is presumed to know what articles such stock of goods may contain, and the fact that the insured keeps in stock certain articles which by a general clause printed in the policy are prohibited to be kept, will not avoid the policy, provided those articles were such as are usually kept in a country store ; and evidence is admissible, in an action on the policy, to prove that custom.

5. But where, in such a policy, in addition to the clause prohibiting a certain article to be kept (gunpowder), there is a separate printed clause permitting a reasonable specified limited quantity of such prohibited article to be kept for sale, evidence is not admissible to show that it was customary in country stores to keep a larger quantity of such article than that specified in said permissive clause.

6. Franklin Fire Insurance Co. *v.* Updegraff, 7 Wr. 357, and Citizens' Insurance Co. *v.* McLaughlin, 3 P. F. S. 485, distinguished.

November 3d, 1884. Before Mercur, C. J., Gordon, Paxson, Trunkey and Clark, JJ. Sterrett and Green, JJ., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county :* Of October and November Term, 1884, No. 125.

This was an action of covenant by Jonas Frazee against the Pittsburgh Insurance Company upon a policy of fire insurance issued by the defendant company to the plaintiff, dated August 13th, 1881, for $2000, for one year, " on his stock of dry goods, groceries, and merchandise usually kept in a country store, contained in the frame building occupied as store and dwelling, situate, detached, in the village of Selbysport, Garrett county, Maryland."

The policy contained, inter alia, the following printed provisions :—

" III. *Prohibitions and conditions under which this policy becomes null and void.* Except as otherwise permitted and expressed in the printed conditions of this policy, *gunpowder,* . . . . . are positively prohibited from being deposited, stored, kept or used in any building insured upon, or containing any property insured on by this policy, unless by special consent in writing indorsed hereon, naming each article specifically— otherwise the insurance by this policy shall be void."

" IV. *Privilege as to lights, keeping and vending of coal oil, gunpowder, etc.* . . . . . Merchants accustomed to deal in the articles are privileged to keep for sale twenty-five pounds of gunpowder in close tin can, to be sold by daylight only."

" V. *General Provisions.* . . . . . . It is understood and agreed that this policy is void unless the assured be and shall remain the sole, undisputed and exclusive owner of the legal title to the subject of insurance mentioned in this policy, and that the same is free and shall remain free from all incumbrances, except it be otherwise provided in writing in this policy."

A fire occurred November 11th, 1881, by which some of the goods in the store were destroyed and others were damaged. The plaintiff submitted proofs of loss, on receipt whereof the company offered to pay one half the loss, which the plaintiff refused, and he thereupon brought this suit.

On the trial, before WHITE, J., the plaintiff testified that he was the sole and unconditional owner of the goods insured, but that the store business was conducted under the name of J. Frazee & Bro. under an agreement between himself and his brother, Jasper Frazee, by which he (Jonas) contributed all the capital and paid for all goods subsequently added to the stock, and Jasper was employed to conduct the business and was to receive for his services one half the profits realized, less one half of the losses from bad debts, but was not to have, and did not have, any ownership or interest in the

stock of goods.   In this the plaintiff was corroborated by his brother Jasper.

The defendants claimed that the property insured belonged to Jonas Frazee and Jasper Frazee doing business as Frazee & Bro., each owning one half interest in the property.   They also claimed that the policy had been avoided by the insured keeping on the premises a greater amount of gunpowder than was permitted under clause 4 of the policy above quoted.   To establish these claims they put in evidence the proofs of loss furnished by the plaintiff, sworn to by Jonas Frazee, the plaintiff, and Jasper Frazee, which contained among other clauses the following:

"4. That the property insured belonged to Jonas Frazee and Jasper Frazee, doing business as Frazee & Bro., each owning one half interest in the property."

Appended to the proofs of loss were sundry schedules, among which was one of goods saved, from which the following are extracts:

" 29 lbs. Rock powder, at 10c    .    .    $2.90 "
"  7  "  Rifle     "      "  20c  .    .    .  1.40 "
" 11  "      "      "      "  20c  .    .      2.20 "

Other evidence submitted in support of their defence is referred to in the opinion of this court.

The plaintiff's counsel, in rebuttal, made the following offer:   "To prove that the policy in suit, stipulating in the *written* part thereof, that the goods insured are such as are usually kept in a country store, and it already being in evidence that the goods destroyed were kept in a country store, the plaintiff proposes to prove by the witness on the stand, that it is usual and customary to keep powder, both gunpowder and rock-powder, in the quantities indicated by the schedule attached to the proofs of loss, in a country store."

Objected to as incompetent and irrelevant, and especially because the fourth condition of the policy provides the quantity of gunpowder that may be kept for sale by merchants accustomed to deal therein, and it is not competent to show any custom to keep more.

By the court:   We have here, what is usually kept in a country store, and your conditions say nothing about what is kept in a country store.

Objection overruled.   Exception.

The testimony of two witnesses admitted under said offer, one a dealer in explosives and another a country storekeeper, was to the effect that it is a general thing in country stores to have in stock one keg of rifle powder, and often part of another, and from one to ten kegs of rock or blasting powder, each keg containing twenty-five pounds, the kegs generally

being made of iron with screw bungs that can be taken out so that the powder can be poured out into the scale and the bung replaced.

The defendant presented, inter alia, the following points:

1. If the agreement between Jonas and Jasper Frazee was, that Jonas should contribute the capital, and Jasper manage the business of the store mentioned in the policy, and receive half the profits, and bear half the losses from bad debts, then Jonas was not the sole and exclusive owner of the legal title to the goods insured upon, within the true intent and meaning of the fifth condition of the policy; and if the jury so find from the evidence, the verdict should be for the defendant.

*Answer*. This point is affirmed. But if the plaintiff furnished the original stock of goods and kept up the stock with his own money, and his brother Jasper had no interest in the stock, but for his services in keeping the store, instead of a salary, was to receive one half the net profits, and be responsible for one half the bad debts, then the goods would be the sole property of Jonas Frazee. (First assignment of error.)

4. If the jury find from the evidence that, after the issuance of the policy and before the occurrence of the loss, without the consent of the defendant, there was kept in the building containing the goods insured upon, more than twenty-five pounds of gunpowder, the verdict should be for the defendant.

*Answer*. This point is affirmed, unless the jury find that more than that quantity was usually kept in country stores, and that the defendant company knew of this custom.

The court charged the jury, inter alia, as follows:

The first point presented by the plaintiff's counsel and the first point presented by defendant's counsel, raised this question, and I say to you, in answer to those points [that, if Jonas was the exclusive owner of the goods; if Jasper had no interest in the goods themselves; was only interested in the proceeds, was entitled to one half the net proceeds by way of compensation for attending to the store, and being liable for one half of the bad debts; that if these are the facts, the plaintiff must be considered in law the sole and exclusive owner of the goods.] (Sixth assignment of error.) As insurance companies prescribe their own conditions, they ought to be clear and unambiguous. They ought to be put in such form and in such language that the insured may not be misled or entrapped. They ought to be so clear that there would be no controversy or mistake on the subject. It is because I think the policy in this respect is not so clear and unambiguous, that I allowed evidence to be given as to what was the

usual custom among country stores. The written part of the policy is for goods, &c., "usually kept in a country store." Where there is any conflict between the written and printed portions of a policy, the written portion should prevail...... The fourth clause would seem to limit merchants who sell gunpowder to keep not exceeding 25 lbs. of gunpowder, and gunpowder, I apprehend, covers all kinds of powder used for explosive purposes, either rock or rifle powder—but the language is peculiar again. "Are privileged to keep for sale 25 lbs. of gunpowder in close tin *can.*" Does that mean that there shall be only *one* can? If so, there can be only one kind of powder kept. This seems to be an enlargement of the third condition. It also applies to merchants generally, in the city as well as elsewhere. There would be a very evident propriety in making some discrimination between merchants in the country and merchants in the city. The latter can replenish their stock much more frequently than the former. It strikes me that the language in this policy is not so clear and free from ambiguity and doubt as it ought to be, and in view of the written portion of the policy, I have admitted evidence as to what is the custom among country stores, [and I leave it for you to say whether it was customary in such stores to keep more than 25 lbs. of gunpowder, and whether that custom was known to the defendant company. If so, I then say to you that the plaintiff can recover, notwithstanding this clause in the policy.] You have the testimony of two witnesses, I believe, that it is the custom among country stores to keep rifle powder in one keg, 25 lbs. perhaps, and different kegs of rock powder, and to a much larger amount than is indicated in this policy, and the testimony would go to show that that was a custom invariable in country stores. [Now did the defendant company know of that custom? There is no direct evidence that they did, but if it is a universal custom among country stores, it would not be a violent presumption to suppose they did know it. Bearing on that question is the fact that when these proofs of loss were made out at first, the number of pounds of powder was clearly set forth, and there seems to have been no objection made by any of the officers of the company at that time. No question raised on this point then.] The only thing spoken about then, as I remember the testimony, was that Jasper being a half owner, Jonas was not entitled to the whole amount. It may be some evidence to your minds, the fact that Mr. Gordon or Mr. McKeown raised no objection on the score of there being more powder than the policy provided for,—that they did not consider that as a violation of the condition of the policy; that, at least, they did not consider

it material in the case. I will say, however, that the insurance company are not limited in their defence here to the objections they made at that time. Counsel for plaintiffs have asked me to instruct you that there was a waiver as to anything else, and I have declined to instruct you in that way. If you find that the plaintiff was not the sole and exclusive owner of the goods, your verdict should be for the defendant; if he was, then you pass to the next question, and if it was the universal custom to keep a greater quantity of gunpowder in country stores, and the defendant knew that at the time the policy was executed, then the plaintiff is entitled to recover the whole amount of the policy with interest on it from the time fixed in the policy for payment after the proofs were furnished.

Verdict for the plaintiff for $2,462, and judgment thereon. The defendant took this writ of error, assigning for error the answers to the above points, and the portions of the charge above included within brackets.

*John G. Bryant* (with him *John A. Wilson*), for the plaintiff in error.—Under the evidence Jonas and Jasper Frazee were partners *inter sese*, each entitled to half the profits, and liable for half the losses whether arising from depreciation, deterioration, injury or destruction of the goods by fire or otherwise. As the policy in express terms contained an exception to the prohibition against keeping gunpowder, which permitted a certain limited amount to be kept, such express clause cannot be modified by the prior general clause insuring such goods as are generally kept in a country store. There was no repugnance or inconsistency between the two clauses. The contract was, to insure the goods in the store, of the kinds usually kept therein, on condition that certain hazardous goods usually kept therein, *be kept only in limited quantities.* The clause "usually kept in a country store" is used to indicate the kinds of merchandise contained in the store; the condition furnishes the rule as to the quantities to be kept of articles deemed hazardous: Birmingham Fire Ins. Co. *v.* Kroegher, 2 Nor. 64; Lancaster Fire Ins. Co. *v.* Lenheim, 8 Nor. 497.

*J. M. Stoner* (*J. W. Thomas* with him), for the defendant in error.—The evidence to show that it was customary to keep more than 25 pounds of powder in country stores, and that the defendant company knew that fact at the time of issuing the policy, was admissible: Franklin Fire Ins. Co. *v.* Updegraff, 7 Wr. 350; Citizens Ins. Co. *v.* McLaughlin, 3 P. F. S. 485; May on Insurance, §§ 177, 233, 239; Wood on Insurance, § 63; Flanders on Insurance, 93; Phœnix Ins. Co.

v. Taylor, 5 Minn. 492; Angell on Insurance, §§ 14, 15;
1 Phillips Insurance, § 489; Peoria Insurance Co. v. Hall,
12 Mich 214; Wall v. Howard Ins. Co., 14 Barb., 390;
Harper v. Albany Mutual Ins. Co., 17 N. Y. 199; Harper
v. New York City Ins. Co., 22 N. Y., 442; Whitmarsh v. Con-
way Fire Ins. Co., 16 Gray, 359; Lounsbury v. Protection Ins.
Co., 8 Conn. 459; Harper et al. v. City Ins. Co., 1 Bosworth,
520.

It was in evidence, that the company knew, at the time the
proofs of loss were made out and furnished, the quantity of
powder on hand at the time of the fire, and made no objec-
tion.   In the Kroegher case the agent of the company knew
of the petroleum, but his knowledge could not bind the com-
pany, for he had no authority to waive a positive prohibition
in the policy.   But the company itself could, and we contend
in this case did, waive the limitation of twenty-five pounds.

Mr. Justice CLARK delivered the opinion of the court,
January 19th, 1885.

The policy of insurance upon which this suit was brought
is dated August 13, 1881; it provided indemnity to Jonas
Frazee against loss by fire for one year upon "his stock of
dry goods, groceries and merchandise usually kept in a
country store, contained in the frame building occupied as
store and dwelling, situate, detached, in the village of Selbys-
port, Garrett county, Maryland."

By one of the general provisions of the policy, it was
agreed that it should be void "unless the assured be and
shall remain the sole, undisputed and exclusive owner of the
legal title to the subject of insurance mentioned in the policy."
Jonas Frazee in substance testified that he owned the stock
of goods himself; that he purchased it from his brother,
Charles F. Frazee, and paid for it with his own money; that
his brother Jasper had no interest whatever in it, but was
employed merely to conduct the business, receiving for his
services one half of the profits realized, less one half of the
losses from bad debts.   In this he was corroborated by his
brother Jasper, who stated that he never had, nor claimed to
have, any interest in the stock, and that he was simply an
agent or employee of his brother, the plaintiff, who was the
absolute owner.

There was, it is true, much countervailing proof on this
point; the books were opened in the name of J. Frazee &
Bro.; the sign set up in front of their place of business was
in the same form, and the first proofs of loss clearly stated a
joint ownership of the goods.   These apparently inconsistent
facts were to some extent explained, however, and the ques-

tion as to the real ownership of the stock was plainly one for the jury; there was without doubt abundant evidence to justify the submission.

The court instructed the jury that "if the plaintiff furnished the original stock of goods, and kept it up with his own money, and his brother Jasper had no interest in it, but for his services in keeping the store, instead of a salary, was to receive one half of the net profits, and be responsible for one half of the bad debts, then the goods would be the sole property of Jonas Frazee." In this, we think the court was clearly correct. No question as to any partnership relation or liability which by construction of law might be supposed to exist, as to third persons or creditors, is here presented. The inquiry is as to the ownership of the stock as between the parties themselves, and, in such case, where there is a positive agreement that must govern. If the evidence of Jonas and Jasper Frazee is believed, there was such agreement, and Jonas Frazee, as against Jasper at least, was certainly the sole, undisputed and exclusive owner of the goods. The first and sixth assignments are therefore not sustained.

The remaining assignments, however, relating to the ruling of the court as to the plaintiff's right under the policy to store gunpowder in the building containing the insured property, in excess of the amount specified in the policy, possess more merit. In Franklin Fire Insurance Co. *v.* Updegraff, 7 Wr. 357, the insurance was upon "merchandise such as is usually kept in country stores;" the stock, at the time of the fire, consisted in part of hardware, china and glassware. By the terms of the policy, merchandise of this character was classed as "hazardous," and subjected the insured to the payment of higher rates; by the 12th condition, the omission to specify such property voided the policy; it was held, however, in a suit to recover the loss, that the insurance was not void because hardware, china and glassware were not specifically mentioned, if the articles were such as were usually kept in a country store. The expression "merchandise, such as is usually kept in country stores," was deemed a sufficient designation of the articles insured, and to include "hardware, china and glassware," if these articles were usually so kept. The company accepting such a general description of the stock insured was bound to know what was usually kept in a country store, and the finding of the jury was conclusive on that question.

In Citizens' Insurance Co. *v.* McLaughlin, 3 P. F. S. 485, the insurance was upon "a tannery and patent leather manufactory;" the policy provided that benzole, to the amount of five barrels, might be kept in a shed detached from the build-

ings, one hundred feet distant, and nowhere else on the premises; it was stored in the shed, as stipulated, but was carried in cans into the buildings insured as needed and used in the process of japanning leather. It appeared, however, that benzole was ordinarily used in the manufacture of patent leather, and that this was the purpose in providing for its storage; therefore, it was held, that the presumption was that it was intended by the contracting parties that benzole might be used in the factory as it was ordinarily used in similar factories; that the policy included whatever was necessary and essential in conducting the business, if not expressly excepted.

Under the doctrine declared in Franklin Ins. Co. v. Updegraff, the insurers were bound to know, if the fact were so, that gunpowder was a commodity usually kept in a country store, whether specifically set out in the policy or not; the right to keep and sell that article, does not in this case, however, depend upon mere construction, it is not left to inference; by special mention, within certain limits, the right is expressly conceded, and the case last referred to we think becomes unimportant. It is said, however, that as the insurance is upon such articles as are kept in a country store, the presumption is, that the parties intended that gunpowder should be kept in the usual quantity, and the case of Citizens Ins. Co. v. McLaughlin is relied upon as supporting this view. There is, however, a plain distinction between that case and the case under consideration. There was no restriction in that case as to the amount of benzole to be used in the factory in the manufacture of Japanned leather, the presumption was, that it was intended to be used as it was ordinarily used, in similar factories; but in this case the amount of gunpowder which might be kept on hand in the store for the purpose of sale, in the plaintiff's business, is expressly limited, and the limitation is written as a condition of the policy. No fraud is shown, no undue advantage alleged, no ambiguity or uncertainty exists in the contract and we must, therefore, read the contract as it is plainly written. It is true that the restriction is contained in the printed portion of the policy, which is prepared in such general form as to meet all cases presented; that the written parts inserted must therefore be taken as being more immediately expressive of the intention of the parties, and if there be any repugnancy or conflict between them, the latter must have controlling effect; that the language of the policy is the language of the company, and in case of doubt and ambiguity must be taken most strongly against the company; but we can discover no such repugnancy or conflict: the contract is clear and therefore conclusive. Nor can we regard the restric-

tion as unreasonable; it applies only to the particular building containing the property insured, and it is a wise precaution when practicable, not only upon the part of the insurer but the insured, that the storage of a highly dangerous and inflammable substance like gunpowder, should be in a place apart from, and reasonably removed from the general store.

The court erred, we think, in receiving evidence of the general custom of merchants in country stores as to the quantity of gunpowder usually kept on hand, and in submitting to the jury the question, whether the conduct of the insured was in compliance with that custom.

The judgment is therefore reversed and a venire facias de novo awarded.